Mar. 1841.

The Farmers
Loan and
Trust Co.
v.
Smith and
another.
has become of age, and after such information is gi-ven to her, and she freely consents to such a dispo-sition of the money, I can see no objection to granting the order for its payment. (Ferris vs. Bush and others, 1 Edwards' Rep. 572.)

------

------

### The Farmers' Loan and Trust Company
### vs. Smith and another.

An executory contract for the sale and purchase of lands, transferred by the vendee to a third person, may be surrendered by such third person, and a new agreement for the sale of the same lands to the assignee at a larger price and upon a longer credit, is not usurious, per se ; and a mortgage given in pursuance of such new agreement, will not be declared void for usury.

The pleadings and proofs in this cause, present, substantially the following case.

On the 11th January, 1836, Walbridge and Hunt made a contract with Stoddard and McOmber, by

which the former agreed to sell, and the latter agreed Mar. 1841.
to purchase, lot 36, containing 368 acres; and lot
42, containing 340 acres—both lots lying in Wheat-
field, Niagara county, at the price of ten dollars per
acre, for the whole quantity, payable, one-fifth in
hand, which was paid; and the residue in six equal
annual installments, with annual interest. Stoddard
and McOmber assigned their interest in this contract
to the defendant Platt Smith, 2d, and one Hawkins,
in May, 1836. In April, 1836, Walbridge and Hunt
made a like contract with Smith and Hawkins, by
which the former agreed to sell and the latter to pur-
chase lot No. 35 in the same town, containing 349
acres, for the sum of $3,458 43, of which $915 53
was to be paid and was paid in hand, and the balance
was to be paid in five equal annual installments, with
annual interest. On the 11th January, 1837, an in-
stallment of principal and interest became due upon
the Stoddard and McOmber contracts, assigned to
Smith and Hawkins; and upon that day, Smith and
Hawkins paid Walbridge and Hunt five hundred dol-
lars in cash, and executed their note for the balance
of such installment—being $855 26, including inter-
est, payable at ninety days. This note was not paid
at maturity, and Walbridge and Hunt sued the ma-
kers upon it at law. It would seem, also, that they
sued Smith and Hawkins upon the contract for the
sale of lot No. 35. Before judgment was obtained,
and on the 28th Dec. 1837, Smith and Hawkins
agreed with Walbridge and Hunt to surrender all
three of the contracts to be cancelled; and that Wal-
bridge and Hunt should sell them the lands descri-
bed in the contracts, and make conveyances thereof
to them in separate parcels, and take from them se-

The Farmers
Loan and
Trust Co.
v
Smith and
another.

Mar. 1841.

The Farmers
Loan and
Trust Co.
v.
Smith and
another.

parate bonds and mortgages for the purchase money. By this agreement, Walbridge and Hunt were to sell to Hawkins lot No. 36, and part of lot No. 35, by separate conveyances, and take from him separate mortgages for the payment thereof, according to the contract price, with the addition of seventy-five cents per acre; which mortgages were to be payable in 1849, with interest payable annually. They were also to sell to Smith lot No. 42, and part of lot No. 35, by separate conveyances, and take from him separate mortgages for the payment thereof, according to the contract price, with the addition of one dollar per acre, which mortgages were to be payable in 1847, with annual interest; and Hawkins and Smith were each to pay one-half of the costs of the suit at law upon the note. This agreement was perfected by the surrender and cancelling of the contracts and deeds executed 28th Dec. 1837, by which, among other things, Walbridge and Hunt conveyed to Smith lot No. 42, and he executed to them a mortgage upon that lot for $3,236, payable November 1, 1847, with annual interest. The agreement in other parts was likewise carried out. This mortgage upon lot 42 was assigned by Walbridge and Hunt to the complainants, and no interest having been paid upon it, they filed this bill to foreclose it. The bill avers that the purchase money of the mortgaged premises was the entire, true, sole, and only consideration of the mortgage. The answer sets up the whole transaction, and insists that the agreement was usurious, and avers that the facts set up in the answer constituted the entire, true, sole, and only consideration of the mortgage. The answer is called for upon oath, and the cause comes on for hearing upon pleadings and proofs.

*R. Haight,* for complainants. Three things are
necessary to constitute usury : 1. A loan, either ex-
press or implied ; 2. An understanding that the mo-
ney lent shall or may be returned; 3. That a grea-
ter rate of interest than is allowed by law, shall be
paid. (Lloyd vs. Scott, 4 Peters' Rep. 205 ; Van
Schaick vs. Edwards, 2 Johnson's Cases, 355;
Chitty on Bills, 8th American from 8th London
edition, 99.)

To constitute usury, there must be lending and
borrowing ; and what are such, is a matter of legal
discretion. (Heytte vs. Logan, 1 Marshall's Rep.
530.)

There must also be a corrupt agreement and an
unlawful or corrupt intent. (7 Johns. Rep. 69 ; 8
Cowen, 670 ; 7 Johns. Rep. 77.)

In this case there was no loan express or implied—
there was no lending or borrowing—there was no
corrupt agreement—there was no corrupt intent.
The agreement was, in substance and effect, to can-
cel and surrender an executory contract, which was
done, and then the land was resold on entirely new
and independent terms. It was a valid contract to
sell a certain quantity of land for a certain sum, *to be*
secured by bond and mortgage, payable at a future
period. In case of an executory contract for the
purchase and sale of property, it is competent for the
parties by mutual consent to cancel the same, and
make a new one different in its terms, by which the
party selling is to receive and the party purchasing
is to pay a larger sum than was originally agreed to
be paid. (Benedict vs. Lynch, 1 Johns. Chan. Rep.
370.)

The defendant alleges in his answer, that the bond

Mar. 1841.   and mortgage were intended as a cover to means by
which the defendant should pay and Walbridge and

The Farmers
Loan and
Trust Co.
v.
Smith and
another.

Hunt receive more than the legal rate of interest for
the forbearance of the payment of the amount due
upon the contract which was cancelled. But there
is no evidence to sustain this allegation.

Should it be held, however, that the bond and
mortgage are void for usury, (which we contend they
are not,) yet, as the mortgage was given confessedly
for the purchase money, or to secure the same, the
complainants have an equitable mortgage upon the
premises for the amount actually due, with interest,
which the court will enforce by a sale of the premi-
ses. (Champlin vs. Brown, 6 Johns. Rep. 398;
Garson vs. Green et al. 1 Johns. Rep. 308; Lynde
vs. Budd, 2 Paige's Rep. 191.) If the mortgage is
void, the deed given to the defendant at the same
time, is also void, and the land reverts to the original
proprietor or his assigns—the execution of the deed
and mortgage being simultaneous acts, and based
upon a common consideration. (2 Paige, 191.)

Other considerations entered into the new agree-
ment. Smith and Hawkins were the joint owners
of the three contracts. For their own purposes and
convenience, they wished to divide their interest and
separate their liability, which purpose they effected
by surrendering the old contracts and purchasing the
lands in separate parcels. Two of these contracts
they held as assignees, and were not personally lia-
ble for the payment of the money due thereon; though
they might possibly enforce it, yet payment could
not be enforced against them personally.

*A. Gardiner, contra.* The bill charges that Platt
Smith, one of the defendants, on the 28th December,

1837, became and was justly indebted to Walbridge and Hunt, in the sum of $3,236, to secure the payment of which, he executed his bond and mortgage. It farther charges that this indebtedness accrued for the purchase money of the mortgaged premises, and that the payment of this purchase money was the entire, true, sole, and only consideration of the mortgage.

The bill calls for an answer upon oath. The answer thus called for, denies that the defendant was justly indebted in the sum of $3,236, or any other sum, except in the manner in said answer afterwards stated. It then states the facts, and denies that the purchase money of the mortgaged premises was the sole and only consideration of the mortgage, but avers that there was included therein a sum of money intended as a cover to means of usury; and that such mixed consideration, to wit, the real amount of purchase money and the excess for forbearance as to time, was the entire, true, sole, and only consideration for the execution of the said mortgage. This answer is directly responsive to the bill in some of its most material allegations, and must govern. Upon this point the case of Green vs. Hart, (1 Johns. Rep. 581,) is the strongest in favor of the complainants, yet the principles decided in that case do not cover this. In that case, the allegation in the bill was, that the note was transferred for a *valuable* consideration. The answer was, that the transfer was upon an *usurious* consideration, and it was held not responsive to the bill. The allegation in the bill did not require the answer to state the extent of the consideration; and if, to such an allegation, the answer admitted a valuable consideration, it could not go farther and

Mar. 1841.

The Farmers Loan and Trust Co.
v.
Smith and another.

Mar. 1841.

The Farmers Loan and Trust Co. v. Smith and another.

set up an usurious one, and be considered, as to the latter, responsive. In this case, both the allegations in the bill as to the justice of the indebtedness in the full amount stated, and that the sole and only consideration of the mortgage, was the purchase money of the mortgaged premises, opens a door for, and indeed requires, the defendant to state the justice and extent of his indebtedness, and the whole circumstances which entered into the consideration of the mortgage ; and as to all such matters, the answer is directly responsive.

The case of Smith vs. Clark and Smith, (4 Paige, 368,) is in point. The charge in that case was, that Clark was not a *bona fide* assignee of the mortgage for a full and valuable consideration. The answer stated all the matters going to make up the consideration, and it was held responsive. And this decision was affirmed by the court for the correction of errors.

The allegations in this bill are : 1. That the defendant was justly indebted ; and, 2. That the bond and mortgage were executed for the purpose of securing that indebtedness, and for no other purpose. The answer of the defendant is a response to this, and is evidence for the defendant. In addition to the answer, the usury is established by the testimony of Hawkins.

If, in consideration of farther forbearance, a creditor receives a new security from his debtor for an existing debt, he cannot enlarge the amount due, by exacting any thing by way of interest, or exchange for the additional risk he runs by an extension of credit, nor on the opinion he may entertain as to the punctuality of payment, or the ultimate safety of his

debt.   (Andrews vs. Pond, 13 Peters, 65, and 644,
*note.*)

THE VICE CHANCELLOR. This case presents another question under the head of usury, which legal vice seems to possess a fruitful facility in being attached to, or interwoven with, much of the litigation which has been presented for adjudication by this court.   It has been found connected, in some one of its many subtle and shifting devices, with many transactions, tainting their legality and destroying their validity.   Professional ingenuity has been astute to endeavor to attach the taint of usury to transactions which are not fairly infected with this legal leprosy ; and, in some shape, it has been brought in question in a large number of cases which have been submitted to the jurisdiction of this court.   The elements of usury are a *loan* or *forbearance* at a greater rate of interest than the law tolerates, in pursuance of a corrupt agreement and with a corrupt intent.   It implies a lending and borrowing upon terms which the law will not allow.   A debt due, or about to grow due, is perhaps as much a subject of lending and borrowing, as money, goods, or choses in action ; and in such case, the creditor may be the lender, and the debtor the borrower.

In the case now before us, Hawkins and Smith, when they became the purchasers of the Stoddard and McOmber contracts, did not, by such purchase, incur any debt or personal liability to Walbridge and Hunt.   The personal obligation to pay, was on the part of Stoddard and McOmber.   Hawkins and Smith, if they had paid Walbridge and Hunt according to the terms of the contracts, might have enfor-

Mar. 1841.

The Farmers
Loan and
Trust Co.
v.
Smith and
another.

ced a conveyance of the lands embraced in the contracts so assigned to them. But there was no reciprocal obligation on their part to pay. They never could have been prosecuted upon such contracts by Walbridge and Hunt, for the contract price of the lands—the only remedy of the latter was against the lands and upon the covenants of Stoddard and Mc Omber. In fact, it was a mere executory contract on the part of Walbridge and Hunt, which they were bound to fulfil by making conveyances, upon condition that it was performed upon the other side by making payment. This was the right which Hawkins and Smith acquired by the purchase of the contracts, viz. to compel a conveyance after they had made the stipulated payments. We will suppose they had just this right; and after the assignment thus made to them, and some payments made thereon to the vendors, they had ascertained that the payments required to be made by the contracts, fell due too rapidly to suit their convenience or perhaps their means, and if exacted as they became due, they must lose all the advantages which they had acquired by the purchase, and all the payments they had made, for want of funds to meet the accruing payments. Finding this to be the fact, they surrender the contracts to the vendor, and at the same time agree to purchase the same lands at an advanced price, but upon more favorable terms of payment. Does a bond given in pursuance of such an agreement, come within the statute of usury, so that it shall be rendered void?

That is this case so far as lots Nos. 36 and 42 (the last the mortgaged premises in this case) are concerned. It appears to me that there is no material con-

Mar. 1841.

The Farmers
Loan and
Trust Co.
v.
Smith and
another.

flict in the testimony as to the facts. The testimony of both witnesses substantially sustains the facts set up in the answer. Here was no loan made by Walbridge and Hunt to the defendant—there was no debt due from the defendant to them, to be foreborne —there was no agreement for lending and borrowing : it seems to me to be a sale of lands, and a sale of lands alone. When the contracts were cancelled, Walbridge and Hunt held the lands freed from their covenant to convey. I admit that the agreement to cancel the contracts and the agreement to sell and re-purchase, were parts of one and the same agreement, and must be so deemed under the answer and the testimony ; but I do not think this alters the case. Walbridge and Hunt, before the cancellation of these contracts, could with perfect propriety have sold these lands to a third person, for an amount greater than that due him upon the contract, with the condition that such third person should fulfil the contract made them, in case its terms were complied with by the other parties. Such third person might believe, from the probable inability of the purchaser to pay, that he could profitably make such a purchase of Walbridge and Hunt. He certainly could not defeat it for usury. Such an interest is precisely the one which they sell to the defendant ; and why cannot he purchase such an interest as well as another ? It is not a debt which is sold, but an interest in land. Neither do I apprehend that it makes any difference that the contract made personally with Hawkins and Smith, and upon which they were personally bound, was made a part of the same agreement. The same principles must apply to that, as the other. It is in both cases an abandoning of rights or interests in

Mar. 1841.

The Farmers
Loan and
Trust Co.
v.
Smith and
another.

land held upon certain terms, and purchasing new rights or interests in the same lands upon other terms—a bargain which I deem it competent for them to make.

If, however, I could see in the papers sufficient evidence to show that this was resorted to as a mere contrivance to cover a loan, or a device to evade the statute, I should come to another conclusion. The defendant contends that his answer responsive to the bill, shows this intent. I apprehend that the answer of the defendant, so far as it sets up the facts and circumstances connected with the transaction, is responsive to the bill. Those facts must be taken as true. The witnesses, in addition, prove that they are true ; but when the defendant undertakes to draw inferences from those facts and circumstances, and to give them a name and character, and swears to the intent with which these transactions were performed, he goes beyond the legitimate bounds of the answer in asking it to have weight as testimony, with relation to the inferences as well as the facts. The facts and circumstances are detailed. It is for the court to draw from them the proper legal inferences ; and in this case it is, that the bond and mortgage are not infected with usury. The case of Crippin vs. Heermance, formerly before this court, (*ante*, p. 133,) is something similar to this.

There must be the ordinary reference to a master to compute the amount due, &c.